UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DIANE KICZUK,<br>*Plaintiff,* | : :  : | |
| v. | : : : | No. 3:21-CV-707 (KAD) |
| UNITED STATES OF AMERICA,<br>*Defendant.* | : : : | |

<u>RULING ON PLAINTIFF'S MOTION TO QUASH SUBPOENA *DUCES TECUM*</u>

**1. The Factual and Procedural Background**

On May 24, 2021, plaintiff Diane Kiczuk (hereinafter, the "plaintiff") brought this action against the United States of America (hereinafter, the "defendant") in which plaintiff seeks refunds of alleged overpayments to the defendant of federal income tax in certain tax years. Doc. No. 1. The crux of plaintiff's complaint is that in tax years 2015, 2016 and 2017, following a successful application in or about March 2011 pursuant to Conn. Gen. Stat. § 5-192p, she received service-connected disability pension benefits from her employer, the State of Connecticut, as a result of injuries sustained in a fall at work and paid federal income tax when such benefit payments were, in fact, non-taxable. Doc. No. 1, at ¶¶ 5-8, 14. Plaintiff alleges that, under applicable federal statutes and regulations, these payments did not constitute gross income that was taxable because such payments were received under a statute in the nature of a workmen's compensation act which provides compensation to employees for personal injuries sustained in the course of employment. Doc. No. 1, at ¶ 14. Plaintiff acknowledges in her complaint that a service-connected disability pension would be converted to a normal retirement pension and would be taxable if an employee recovers from the predicate injury prior to normal

1

retirement age and is not re-employed. Doc. No. 1, at ¶ 14g. Presumably, in light of this acknowledgement, plaintiff alleged in her complaint that she turned 65 in July 2019 without having recovered from her disability. Doc. No. 1, at ¶ 14h.

On October 12, 2021, defendant served a third-party document subpoena upon the Connecticut Office of the State Comptroller seeking four categories of documents, which are set forth verbatim:

- All documents relating to all hearings involving Plaintiff before the Connecticut Medical Examining Board, including but not limited to transcripts of testimony and documents and exhibits submitted at both the March 26, 2010 hearing and the March 11, 2011 hearing.[1]

- All documents relating to the Connecticut Medical Examining Board's decision, in or about 2010, to reject Plaintiff's application for disability retirement benefits.

- All documents relating to the Connecticut Medical Examining Board's decision, in or about 2011, to grant Plaintiff's application for disability retirement benefits.

- All correspondence between Plaintiff and the Connecticut Medical Examining Board.

Doc. No. 18-3, at 6. Defendant sought compliance with the document subpoena by the Office of the State Comptroller by November 18, 2021. Doc. No. 18-3, at 1. On November 17, 2021, the Office of the Comptroller, through counsel, notified the parties via email that it had gathered documents responsive to the subpoena and that the documents totaled approximately 500 pages. Doc. No. 23, at 2.

In any event, on November 11, 2021, plaintiff moved to quash the subpoena in its entirety. Doc. No. 17. For purposes of standing, plaintiff claims a privacy interest in the confidentiality of her medical records. Doc. No. 18, at 3-7. As to the merits of the document

---

[1] While plaintiff submitted a successful application for disability retirement benefits in 2011 which was the subject of a March 11, 2011, hearing before the Connecticut Medical Examining Board, she had also submitted a prior unsuccessful application in 2010, which was the subject of the March 26, 2010 hearing. Doc. No. 22, at 3.

2

requests, she argues that the documents sought are not relevant to the claim asserted in the complaint because "in determining the taxability of disability pension payments made pursuant to a statute, the task before a court is to examine the nature of the statute itself, not the facts underlying the award of the particular disability pension or how the awarding body, in this case, the Medical Examining Board, went about the performance of its task." Doc. No. 18, at 12.

In its memorandum in opposition dated November 24, 2021, the defendant argues that the plaintiff lacks standing to object to a non-party subpoena and that the records sought are relevant or at least reasonably calculated to lead to information that could bear on issues and allegations that plaintiff has raised in the complaint. *See generally* Doc. No. 22. The Court heard oral argument on January 3, 2022, Doc. No. 26, and for the following reasons, plaintiff's motion to quash is GRANTED, in part, and DENIED in part.

**2. Plaintiff's Standing to Challenge the Subpoena**

As an initial matter, the Court concludes that plaintiff has standing to challenge the document subpoena served by the defendant upon the Connecticut Office of the State Comptroller. "Pursuant to Rule 45 [of the Federal Rules of Civil Procedure], any party may serve a subpoena commanding a non-party to produce designated documents." *Crespo v. Beauton*, No. 3:15-CV-412 (WWE) (WIG), 2016 WL 259637, at *2 (D. Conn. Jan. 21, 2016) (citation and quotation marks omitted). "Rule 45 subpoenas are subject to the relevance requirements set forth in Rule 26(b)." *Crespo*, 2016 WL 259637, at *2; *citing* Fed. R. Civ. P. 45. Federal Rule of Civil Procedure 45(d)(3)(A) states, in pertinent part, that "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that … (iii) requires disclosure of privileged *or other protected matter*, and if no exception or waiver applies." (emphasis added). "The burden of persuasion in a motion to quash a subpoena issued

in the course of civil litigation is borne by the movant." *Dukes v. NYCERS*, 331 F.R.D. 464, 469 (S.D.N.Y. 2019) (citation and quotation marks omitted).

Here, plaintiff seeks to quash a subpoena served by the defendant upon a non-party to this litigation. "A party ordinarily lacks standing to quash a subpoena directed at a non-party unless the party is seeking to protect a personal privilege or right. If a party moves to quash a subpoena directed at a nonparty, the claim of privilege or right must be personal to the movant, not the nonparty the subpoena was served on." *Strike 3 Holdings, LLC v. Doe*, 337 F.Supp.3d 246, 251–52 (W.D.N.Y. 2018) (citation and quotation marks omitted); *see also Weinstein v. University of Conn.*, No. 3:11-CV-1906 (WWE), 2012 WL 3443340, at *2 (D. Conn. Aug. 15, 2012) ("[n]umerous cases have held that a party lacks standing to challenge a subpoena absent a showing that the objecting party has a personal right or privilege regarding the subject matter of the subpoena.").

The documents sought by defendant from the Office of Comptroller relate to plaintiff's applications for disability retirement benefits and, as such, include medical records and information pertaining to plaintiff's physical conditions as well as testimony, correspondence and decisional documents that likely include references to such information. Federal courts have consistently recognized that individuals have a privacy interest in their medical records, including a privacy interest sufficient to pursue a motion to quash a Rule 45 subpoena. *See e.g. Matson v. Bd. of Educ., City School Dist. of N.Y.*, 631 F.3d 57, 63-64 (2d Cir. 2011) ("there exists in the United States Constitution a right to privacy protecting the individual interest in avoiding disclosure of personal matters…[this] includes the right to protection regarding information about the state of one's health."); *Doe v. Southeastern Penn. Transp. Auth.*, 72 F.3d 1133, 1138 (3d Cir. 1995) (finding that medical records, "which may contain intimate facts of a

personal nature, are well within the ambit of materials entitled to privacy protection" and are "precisely the sort intended to be protected by the penumbras of privacy."); *Jacobs v. Connecticut Community Technical Colleges*, 258 F.R.D. 192, 194-95 (D. Conn. 2009) (holding that plaintiff had a personal privacy right in his psychiatric and mental health records sufficient for standing to challenge a Rule 45 third party subpoena seeking such records); *Shutrump v. Safeco Ins. Co. of America*, No. 17-CV-22 (CVE) (TLW), 2017 WL 3579211, at *2 (N.D. Okla. Aug. 18, 2017) ("Plaintiff clearly has a privacy interest in a file that contains his medical records, and because plaintiff has a legitimate privacy interest in the contents of the file, he has standing to challenge the subpoena."); *Merlo v. McDonough*, No. 2:19-CV-5078 (ODW) (JC), 2021 WL 4434336 (C.D. Ca. Aug. 2, 2021) (plaintiff has a privacy interest in medical records sought through a third party subpoena sufficient to qualify such records as "other protected matter and afford standing to Plaintiff to challenge their disclosure through a motion to quash.").

While defendant appears to suggest that plaintiff's voluntary disclosure of medical records to the Connecticut State Comptroller undermines plaintiff's standing to challenge a Rule 45 subpoena seeking disclosure of those same records in connection with the instant action, Doc. No. 22 at 8, the Court does not agree that a voluntary prior disclosure of medical information to one party somehow operates as a general and blanket waiver of privacy interests in those records with respect to all third parties who eventually may seek access to those same records and information. Defendant has not cited to any case that supports such an expansive proposition. While the Court recognizes that, in particular cases, a plaintiff's privacy interests in medical records could be outweighed by their relevance to issues in the litigation, any such relevance does not vitiate a plaintiff's standing to challenge the Rule 45 subpoena as a threshold matter. *See Beeson v. Safeco Ins. Co. of America,* No. CIV-20-327 (SLP), 2021 WL 5288599 (W.D.

Okla. June 29, 2021) (finding that plaintiff had standing to challenge a Rule 45 subpoena seeking medical records she voluntarily disclosed in connection with a prior car accident, but ordering those medical records to be disclosed as they were relevant to plaintiff's claims of injuries arising from a subsequent accident). Accordingly, the Court concludes that plaintiff has standing to challenge the document subpoena issued by the defendant to the State Comptroller and will next address whether such documents are sufficiently relevant to issues raised in this matter that such privacy interest is overcome.

### 3. The Relevance of the Subpoenaed Documents

Parties may obtain discovery regarding any non-privileged matter that is relevant to the subject matter involved in the pending litigation. Fed. R. Civ. P. 26(b)(1). The information sought does not need to be admissible at trial; it need only be reasonably calculated to lead to the discovery of admissible evidence. *Id.* "Relevance" under Federal Rules of Civil Procedure 26(b)(1) has been defined broadly to include "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351(1978). In the discovery phase of a case, "[t]his obviously broad rule is liberally construed." *Daval Steel Products v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991) (*citing Oppenheimer*, 437 U.S. at 351). Since the concept of relevance is not limited by considerations of evidentiary admissibility at the discovery stage, *see* Fed. R. Civ. P. 26(b)(1), "[i]t is well established that relevance for the purpose of discovery is broader in scope than relevance for the purpose of the trial itself." *Vaigasi v. Solow Mgmt. Corp.*, No. 11-Civ-5088 (RMB) (HBP), 2016 WL 616386, at *11 (S.D.N.Y. Feb. 16, 2016); *accord Pal v. Cipolla*, No. 3:18-CV-616 (MPS) (TOF), 2020 WL 564230, at *7 (D. Conn. Feb. 5, 2020) (relevance is "construed broadly" in discovery); *Martino v. Nationstar Mortg. LLC*, No. 3:17-

CV-1326 (KAD), 2019 WL 2238030, at *1 (D. Conn. May 23, 2019) (at discovery stage, relevance is "an extremely broad concept").

In *Take v. Commissioner of Internal Revenue Service*, 804 F. 2d 553 (9th Cir. 1986), *aff'g* 82 T.C. 630 (1984), the Ninth Circuit Court of Appeals addressed the issue of whether disability retirement benefits were excludable as gross income under the same statute and IRS regulations at issue in the instant action. The Ninth Circuit concluded that statutes that do not restrict the payment of benefits to cases of work-related injury or sickness are not to be considered workmen's compensation acts for purposes of an IRS exclusion from gross income, *see Take,* 804 F.2d at 557, and further held that courts must examine "the statute under which a taxpayer receives benefits to determine whether the law qualifies for [an exclusion]." *Take,* 804 F. 2d at 558. Addressing a similar question in *Rutter v. Commissioner of Internal Revenue*, 760 F.2d 466, 468 (2d Cir. 1985), the Second Circuit Court of Appeals observed that "in determining whether such payments are excludable from gross income, the regulation charges us to look to the nature of the statute, rather than the source of the injury, and a statute that does not distinguish between work-related injuries and other types of injuries is not in the nature of a workmen's compensation statute." Relying upon *Take* and *Rutter*, plaintiff argues that the documents sought by defendant from the Office of the State Comptroller are irrelevant because the proper focus for inquiry in this matter is the nature of the statute pursuant to which plaintiff's benefits were awarded, not the source or nature of the injuries sustained. Doc. No. 18, at 12. Defendant argues that the records sought bear directly upon allegations set forth in the complaint and at issue in this litigation and meet established standards of relevance. Doc. No. 22, at 13.

The Court has reviewed the Connecticut Medical Examining Board's April 12, 2011, Notice of Decision awarding plaintiff disability retirement benefits. Doc. No. 18-1. The Notice

7

is silent as to the specific statute pursuant to which the Board awarded benefits to the plaintiff. At a minimum, some of the documents sought likely will shed light on this issue. Further, while the Court recognizes that there is a legitimate question under *Take* and *Rutter* whether facts regarding the plaintiff's underlying injury and the circumstances surrounding that injury would be admissible at all during a final adjudication of this matter, that is not the standard that is applicable at the discovery stage of these proceedings. Given that the Office of the Comptroller has identified 500 pages of material responsive to the categories of information sought in the document subpoena, this Court cannot say with any certainty that there is no information in those documents that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case. It is certainly plausible that there may be information pertaining to plaintiff's successful 2011 application for disability retirement benefits that may be pertinent or may lead to other information pertinent to the finder of fact's ultimate determination of whether those benefits were under a statute in the nature of a workmen's compensation act. *Cf. Stanley v. United States*, Civ. Nos. 93-S-2340, 2341, 2342 and 2382, 1995 WL 525592 (D. Colo. April 11, 1995) (denying summary judgment with respect to the question of whether disability retirement benefits awarded to plaintiff under a statute in the nature of a workmen's compensation act because the outcome depended, in part, on resolution of certain disputed facts).

Furthermore, medical records and decisional documents pertaining to plaintiff's successful 2011 application for benefits are also directly relevant or at least reasonably calculated to lead to the discovery of potentially admissible evidence with respect to the issue of whether plaintiff recovered from the injuries that were the predicate of her successful claim prior to her normal retirement age such that they could be converted to taxable benefits. As a preliminary point, it is not entirely clear to the Court whether this issue is an element of the cause

of action asserted by the plaintiff or more in the nature of an affirmative defense that potentially could be asserted by the defendant during this litigation depending on development of facts in the course of discovery.  The Court need not resolve the appropriate procedural posture this issue may have at a penultimate determination on the merits, but need only consider this issue in the context of the broad scope of discovery permissible at this stage of the proceedings based on the allegations raised in the complaint.  Here, plaintiff has specifically alleged in the complaint that "[t]he Plaintiff turned 65 in July 2019 without having recovered from her disability."  Doc. No. 1, at ¶ 14h.  Further, in the parties' joint 26(f) Report, Doc. No. 11, the parties identified "[w]hether Plaintiff recovered from her alleged injury before reaching her normal retirement age" and "[d]etails surrounding Plaintiff's injury" as anticipated topics for discovery, which is entirely consistent with the allegation set forth in plaintiff's complaint.[2]  The parties themselves took pains to emphasize to the Court that the scope of discovery that might be required in this case was more expansive than readily apparent from the face of the complaint and the narrow confines that plaintiff now seeks to impose.  As the parties observed, "the needs of the case are

---

[2] The 26(f) report is not a trivial pleading and the parties' representations in that report, particularly one jointly undertaken, are not without consequence.  The Court very often relies upon those representations in assessing the needs of the case and the parameters of case management.  *See, e.g., State Farm Fire & Cas. Ins. Co. v. Sayles,* 289 F.3d 181, 182 (2d Cir. 2002) (citing Rule 26(f) Report to support assertion that a fact was undisputed); *S.C. Johnson & Son, Inc. v. Henkel*, No. 3:19-CV-805 (AVC), 2020 WL 5640528 (D. Conn. Sept. 22, 2020) (undisputed facts set forth in parties' Rule 26(f) report could be relied upon by the factfinder as stipulations); *Doe v. Westport Bd. of Educ.*, No. 3:18-CV-1683 (KAD), 2020 WL 869861, at *1 n.1 (D. Conn. Feb. 21, 2020) ("[I]n the parties' Rule 26(f) Report, this fact was listed as undisputed ... taking this issue out of the case."); *Pal v. Cipolla*, No. 3:18-CV-616 (MPS), 2020 WL 564230 (D. Conn. Feb. 5, 2020) (Court declined to phase discovery as requested by defendants where parties represented in their 26(f) report that phased discovery would be unnecessary); *RIDE, Inc. v. APS Tech., Inc.*, No. 3:11-CV-1721 (JCH), 2015 WL 9581728, at *4 (D. Conn. Dec. 30, 2015) (citing Rule 26(f) Report to support assertion that a material fact was undisputed); *Murray v. Town of Stratford*, 996 F.Supp.2d 90, 97 n.11 (D. Conn. 2014) ("The Court also relies upon the forty-two paragraph Statement of Undisputed Facts found in the parties' Rule 26(f) Report of Parties' Planning Meeting, filed June 27, 2011[.]").

greater than the amount in controversy may imply" and "[w]hile the instant suit seeks recovery in the amount of $10,081.00, Plaintiff is 67 years old, has other claims pending before the IRS on the same issue, and thus the determination of this suit will impact the taxability of many more years' income for Plaintiff." Doc. No. 11, at 6. Lastly, both parties acknowledged in briefs in connection with the motion to quash that the issue of whether plaintiff recovered from her injuries prior to her normal retirement age was arguably salient to this litigation. Doc. No. 22 at 16; Doc. No. 23 at 5.

While plaintiff, despite earlier acknowledgement of the scope of discovery that might be required in this matter, now suggests that medical records and information from 2011 would not be relevant to the question of whether plaintiff recovered from her injuries eight years later in July 2019, Doc. No. 23 at 5, the Court disagrees. Plaintiff's medical records submitted in connection with her 2011 application, transcripts of hearings and decisional documents from the Connecticut Medical Examining Board's may contain details of the nature of plaintiff's injuries, symptoms of those injuries and objective findings related to those injuries, which when compared to medical records closer in time to plaintiff's normal retirement age, may suggest that plaintiff did recover or at least permit defendant to develop facts from which they might refute plaintiff's allegation that she did not recover. Accordingly, the Court concludes that the information defendant seeks from the Office of the State Comptroller regarding plaintiff's medical records submitted in connection with her 2011 successful application for disability benefits, her correspondence with the Board concerning that claim and the transcript, exhibits and decisional documents from the hearing on that application are all relevant or at least bear on or reasonably could lead to other matters that could bear on an issue that is or may be in the case,

i.e. whether plaintiff recovered from those predicate injuries prior to reaching normal retirement age in July 2019.

The Court notes that the defendant's document subpoena also requests similar records in connection with plaintiff's unsuccessful 2010 application for disability retirement benefits. The court does not believe such records to be relevant. Nor do they reasonably bear on any issue in this case. Plaintiff did not receive any benefits in connection with this application. This application is not referenced in the plaintiff's complaint and does not form the basis of any claim set forth in the complaint. It is undisputed that plaintiff received benefits only in connection with her 2011 application, continues to receive benefits solely in connection with that application and claims that those benefits received pursuant to the 2011 application are not taxable because they are excluded from gross income. This claim does not depend to any degree on records related to the unsuccessful 2010 application. The 2010 records, hearing transcripts and decisional documents also will not shed light on whether plaintiff recovered by July 2019 from injuries that were the lynchpin of her successful 2011 claim. The 2011 records are certainly sufficient for the defendant to mount any such defense or at least rebut any such contention by the plaintiff.

For the foregoing reasons, plaintiff's Motion to Quash Subpoena Duces Tecum is **GRANTED, in part, and DENIED in part**, and the third party document subpoena to the Connecticut Office of the State Comptroller is modified such that the Office of the Comptroller is **ORDERED** to produce the following documents: (1) all documents relating to and submitted in connection with plaintiff's successful 2011 application for disability retirement benefits, including but not limited to transcripts of testimony, documents and exhibits submitted at the hearing held before the Connecticut Medical Examining Board on March 11, 2011; (2) all documents relating to the Connecticut Medical Examining Board's decision on or about April

12, 2011, to grant plaintiff's application for disability retirement benefits; and (3) all correspondence between plaintiff and the Connecticut Medical Examining Board relating to her successful 2011 application for disability retirement benefits.

Further, in light of the sensitive, private and confidential nature of the medical records and information to be produced by the Office of the State Comptroller, the Court **ORDERS** that, after receipt of documents responsive to the Court's Order from the Office of the Comptroller, the content of any documents containing plaintiff's medical information or references to such medical information shall be designated Confidential-Attorneys Eyes Only and the content of such documents shall be subject to all limitations and conditions applicable to such a designation under the District Court's Standing Protective Order. Defendant is also **ORDERED** to provide a copy of all documents received in response to this order from the Office of the Comptroller to plaintiff's counsel within seven (7) days of receipt.

This is not a recommended ruling. This is an order regarding case management which is reviewable pursuant to the "clearly erroneous" statutory standard of review. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. Civ. R. 72.2. As such, it is an order of the Court unless reversed or modified by the District Judge upon motion timely made.

**SO ORDERED**, on this 11th day of January, 2022, at Bridgeport, Connecticut.

>　　　　　　　　　　　　　　　　*/s/ S. Dave Vatti*
>　　　　　　　　　　　　　　　　Hon. S. Dave Vatti
>　　　　　　　　　　　　　　　　United States Magistrate Judge