UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DIANE KICZUK | ) | CASE NO. 3:21-cv-00707 (KAD) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA | ) | MARCH 31, 2023 |
| *Defendant*. | ) | |

MEMORANDUM OF DECISION
RE: CROSS MOTIONS FOR SUMMARY JUDGMENT, ECF NOS. 31 & 35

Kari A. Dooley, United States District Judge:

Plaintiff Diane Kiczuk, a former State of Connecticut employee, seeks a refund from Defendant United States of America for the taxes she paid on her disability retirement benefits received pursuant to Conn. Gen. Stat. § 5-192p. Although Plaintiff had reported these benefits as part of her total taxable gross income on her federal income tax returns for the 2015, 2016, and 2017 tax years, she alleges that the benefits were excludable from taxable gross income under 26 U.S.C. § 104(a)(1), which excludes from taxable gross income amounts received by an employee "under a statute in the nature of a workmen's compensation act." *See* 26 C.F.R. § 1.104-1(b). Now pending before the Court are the parties' cross motions for summary judgment. Although the parties disagree on the relevance and scope of many of the underlying facts, the parties agree that the motions can be resolved on the determination of whether Plaintiff received her disability benefits pursuant to a statute that is "in the nature of a workmen's compensation act." For the reasons that follow, Plaintiff's motion for summary judgment, ECF No. 31, is GRANTED, and Defendant's motion for summary judgment, ECF No. 35, is DENIED.

**STANDARD OF REVIEW**

The standard under which courts review motions for summary judgment is well established. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," while a dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)). "In deciding a motion for summary judgment, the district court's function is not to weigh the evidence or resolve issues of fact; it is confined to deciding whether a rational juror could find in favor of the non-moving party." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 254 (2d Cir. 2002).

**FACTS AND PROCEDURAL HISTORY[1]**

Plaintiff Diane Kiczuk was employed by the State of Connecticut for over 20 years until she retired in 2009. Defendant's Local Rule 56(a)(1) Statement of Undisputed Material Facts ("Def.'s SOF") ¶¶ 2–3, ECF No. 35-1. Plaintiff originally entered state service in 1981 as a mental health worker and remained in that role until 1983. *Id.* ¶ 1. She reentered Connecticut state service in 1986 and remained a State of Connecticut employee in different capacities until her retirement in 2009. *Id.* ¶ 2; Kiczuk Dep. at 14:11–15:20, ECF No. 36-1. In 2006, Plaintiff became a substance

---

[1] The facts are taken from the parties' Local Rule 56(a) Statements and are undisputed unless otherwise indicated.

abuse counselor for the Connecticut Department of Correction, a capacity in which she worked until she retired effective November 1, 2009. Def.'s SOF ¶ 2; Pl.'s Local Rule 56(a) Statement of Undisputed Material Facts ("Pl.'s SOF") ¶ 3, ECF No. 32.

Plaintiff allegedly sustained multiple injuries over the time period that she was employed with the State of Connecticut.[2] *See* Def.'s SOF ¶¶ 6–12. On December 31, 2008, when leaving work for the day, Plaintiff fell outside on her way to the parking lot. *See id.* ¶¶ 9, 11; Kiczuk Dep. at 61:10–64:8. After this injury, Plaintiff returned to work in Spring 2009 for a 90-day period. Def.'s SOF ¶ 10. On October 20, 2009, Plaintiff applied for disability retirement due to symptoms allegedly relating to the December 2008 fall. *See id.* ¶ 18; Application for Retirement Benefits ("Appl."), ECF No. 36-2; Notice of Decision, ECF No. 36-8. The field of the Application entitled "TYPE OF RETIREMENT" listed two disability-retirement options: "DISABILITY (Non-Service Connected)" and "DISABILITY* (Service Connected)". *See* Appl. at 1. Below the service-connected disability retirement option was an inquiry:

> *If service-connected disability retirement denied, but non-service connected disability retirement approved, I wish to receive the non-service connected disability retirement.
>
> ☐ YES    ☐ NO

*Id.* Plaintiff indicated on the Application that she was seeking service-connected disability retirement and marked the "YES" box in response to the inquiry above, indicating that she would accept non-service-connected disability benefits if she was not approved for service-connected

---

[2] The parties dispute the relevance of many of the facts surrounding the source and nature of Plaintiff's injuries. Because the Court determines that the facts underlying her injury are not relevant to the ultimate legal question presented in the cross motions for summary judgment, the Court does not recite those facts here or resolve those factual disputes.

3

benefits.³ *Id.* In handwritten script, Plaintiff's application was marked "Approved S/C 3/11/11." *Id.*

Plaintiff "provided testimony as well as medical records" in support of her Application to the State of Connecticut Medical Examining Board ("MEB"), which held a hearing on Plaintiff's Application on March 11, 2011. *See* Pl.'s SOF ¶ 5; Notice of Decision. "[A]fter listening to the testimony and reviewing all the documentation," the MEB issued a Notice of Decision on April 12, 2011, approving Plaintiff's "application for service-connected disability retirement." *See* Notice of Decision. The Notice of Decision indicates that "[t]he applicant's case was initially heard in March of 2010 and it was noted the applicant's pain symptoms were consistently noted to be out of proportion to objective findings." *Id.* The Decision further states that, while Plaintiff's reported symptoms are "not clearly related to the [December 2008] fall . . . . The Board finds, on balance, that i[t] is more likely than not, based on the evidence available at this time, that the applicant's fall substantially contributed to her current symptoms." *Id.*

Plaintiff thereafter began receiving disability retirement benefits from the State Employees Retirement System ("SERS"). *See* Pl.'s SOF ¶ 5; April 12, 2011 Letter, ECF No. 36-9; July 30, 2021 Letter, ECF No. 36-12; Pl.'s Mot. Summ. J. Ex. 2 at 8, ECF No. 32-2. Pursuant to the "60% Minimum" SERS rule, Plaintiff's disability retirement benefits were allegedly calculated to be sixty percent of her rate of salary, less the amounts she received from Social Security. *See* Pl.'s SOF ¶ 7; May 6, 2021 Letter, ECF No. 32-3; May 24, 2019 Letter, ECF No. 32-3.⁴

---

³ Plaintiff indicated in her deposition that the Application was completed by the head of Human Resources of the State of Connecticut, but that she reviewed and signed the application. *See* Kiczuk Dep. at 25:13–21.
⁴ *See also Connecticut State Employees Retirement System Tier II Summary Plan Description*, CT Office of the State Comptroller, https://www.osc.ct.gov/empret/tier2summ/tier2summ.htm#DISABIL (last visited Mar. 31, 2023) (stating that, under tier II of SERS, an employee's "combined income including disability retirement benefits, any Social Security payments, certain Workers' Compensation payments limited to temporary total and temporary partial payments, and Disability Compensation benefits under Section 5-142 of the Connecticut General Statutes cannot be less than sixty percent of [the employee's] rate of salary at the time [the employee's] disability occurred"); *Dark Storm*

4

When Plaintiff filed her federal income tax returns to the United State Internal Revenue Service ("IRS") for the 2015, 2016, and 2017 tax years, she included her disability retirement benefits in the calculation of her taxable gross income, and therefore paid taxes on those benefits. Pl.'s SOF ¶ 9. In February 2019, Plaintiff submitted amended federal tax returns to the IRS for the 2015 to 2017 tax years, claiming that her disability retirement benefits should be excluded from taxable gross income and therefore seeking refunds for the alleged overpayment of taxes on those benefits. *Id.* ¶ 10. The IRS denied Plaintiff's refund request on June 4, 2019, and Plaintiff's subsequent attempts to appeal the IRS's decision were allegedly unsuccessful. *See id.* ¶¶ 11–15.

Plaintiff commenced the instant action on May 24, 2021 against Defendant, the United States of America, seeking a refund for the taxes she allegedly overpaid on her disability retirement benefits in the amounts of $4,148 for the 2015 tax year, $4,363 for the 2016 tax year, and $1,570 for the 2017 tax year. Compl. ¶¶ 2, 5, ECF No. 1. Now pending before the Court are the parties' cross motions for summary judgment. The parties agree that the central issue to be resolved in deciding the motions is whether Plaintiff has met her burden of establishing that she receives her payments pursuant to a statute that is "in the nature of a workmen's compensation act," therefore exempting those payments from the calculation of Plaintiff's taxable gross income under 26 U.S.C. § 104(a)(1) and 26 C.F.R. §1.104-1(b).

**DISCUSSION**

"Federal income tax is calculated based on a person's gross income," which is defined by section 61(a) of the Internal Revenue Code as "'all income from whatever source derived.'" *Bell v. United States*, 290 F. Supp. 3d 166, 170 (D. Conn. 2017) (quoting 26 U.S.C. § 61(a)). Courts construe this provision liberally, "in recognition of the intention of Congress to tax all gains except

---

*Indus. LLC v. Cuomo*, 471 F. Supp. 3d 482, 494 n.6 (N.D.N.Y. 2020) (noting that a "[c]ourt can take judicial notice of . . . facts found on official government websites").

5

those specifically exempted." *Taggi v. United States*, 35 F.3d 93, 95 (2d Cir. 1994) (quoting *Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 430 (1955)). "Thus, while it is well-established that section 61(a) is to be broadly construed, it is equally well-established that exclusions from income are to be narrowly construed." *Id.* "A taxpayer claiming an exclusion from income bears the burden of proving that his claim falls within an exclusionary provision of the Code." *Id.* When seeking a tax refund, the taxpayer bears the burden of proving both that the IRS erred in its tax assessment and the amount the taxpayer is entitled to recover. *See United States v. Janis*, 428 U.S. 433, 440 (1976).

Here, Plaintiff claims that the disability retirement benefits, which she alleges that she receives pursuant to Conn. Gen. Stat. § 5-192p ("section 5-192p"), are excludable from the calculation of her gross income pursuant to section 104(a)(1) of the Internal Revenue Code. *See* Pl.'s Mem. in Supp. at 10–12, ECF No. 31-1. "Under § 104(a)(1) . . . 'amounts received under workmen's compensation acts as compensation for personal injuries or sickness' are excluded from gross income." *Rutter v. Comm'r*, 760 F.2d 466, 467 (2d Cir. 1985) (quoting 26 U.S.C. § 104(a)(1)). The regulations promulgated under section 104(a)(1) interpret the section to also exclude from gross income any amounts "received by an employee . . . under a statute *in the nature of a workmen's compensation act* which provides compensation to employees for personal injuries or sickness incurred in the course of employment." 26 C.F.R. § 1.104-1(b) (emphasis added). "However, section 104(a)(1) does not apply to a retirement pension or annuity to the extent that it is determined by reference to the employee's age or length of service, or the employee's prior contributions, even though the employee's retirement is occasioned by an occupational injury or sickness." *Id.*

In determining whether a statute is in the nature of a workmen's compensation act, the proper focus is on "the nature of the statute, rather than the source of the injury, and a statute that does not distinguish between work-related injuries and other types of injuries is not 'in the nature of a workmen's compensation statute.'" *Rutter*, 760 F.2d at 468. "[U]nless a statute contains some provision restricting the payment of benefits to cases of work-related disabilities, it is not in the nature of a workmen's compensation statute." *Green v. Comm'r*, 60 F.3d 142, 143 (2d Cir. 1995) (quoting *Rutter*, 760 F.2d at 468). Applying these principles, the court in *Rutter* held that a statute was not "in the nature of a workmen's compensation act," where the statute provided, in relevant part: "[e]ach employee shall be entitled to leave with pay for the full period of any incapacity due to illness, injury or mental or physical defect, *whether or not service-connected*." 760 F.2d at 467 (emphasis in original). The *Rutter* court reasoned that, under the statute, "all sick leave is compensated, whether work related or not." *Id.* at 468. It therefore did not matter that Mr. Rutter's injuries were, in fact, work-related, because the statute itself neither distinguished between work-related and non-work-related injuries nor restricted payments only to work-related injuries. *See id.*

Both parties rely substantially on *Rutter* and its progeny in advancing their respective positions as to whether section 5-192p is "in the nature of a workmen's compensation act." Plaintiff homes in on the "distinguish" language from *Rutter*, arguing that "once it is determined that a statute distinguishes between work-related and other types of injuries, the inquiry is over; the payments received thereunder are excludable from gross income." Pl.'s Mem. in Supp. at 7–8. Conversely, Defendant homes in on the "restriction" language from *Rutter*, emphasizing that "the touchstone for the analysis . . . is whether the 'statute contains some provision ***restricting*** the payment of benefits to cases of work-related disabilities," and arguing that a statute that merely distinguishes between work-related and non-work-related disabilities is not in the nature of a

7

workmen's compensation act. Def.'s Mem. in Supp. at 9–10, ECF No. 35-3 (emphasis in original) (quoting *Rutter*, 760 F.2d at 468, and *Green*, 60 F.3d at 143). Defendant correctly identifies two categories of statutes: those that award disability pay *only* for work-related disabilities and those that award disability pay regardless of whether the disabilities are work-related, only the former of which can be in the nature of a workmen's compensation act.

However, cases both before and after *Rutter* and *Green* have recognized a third category of statutes: so-called "dual-purpose statutes," which allow for "disability pay for both work-related and non-work-related injuries, but pursuant to separate and independent clauses." *Green v. Comm'r*, 95 T.C.M. (CCH) 1512, 2008 WL 2065187, at *9 (T.C. 2008), *aff'd*, 322 F. App'x 412 (5th Cir. 2009); *see also Byrne v. Comm'r*, 84 T.C.M. (CCH) 704, 2002 WL 31890043, at *3 (T.C. 2002), ("A dual-purpose statute is one which authorizes payments for work-related, as well as non-work-related disabilities and may provide other pension benefits." (quoting *Kane v. United States*, 28 Fed. Cl. 10, 13 (1993), *aff'd*, 43 F.3d 1446 (Fed. Cir. 1994))); *Craft v. United States*, 879 F. Supp. 925, 931 (S.D. Ind. 1995) (recognizing the existence of "dual purpose" statutes). Payments received under a dual-purpose statute may be excluded from gross income if they are received pursuant to the provision of the statute that restricts payments to only work-related disabilities because that provision is "in the nature of a workmen's compensation act." *See Kane*, 28 Fed. Cl. at 14; *Byrne*, 2002 WL 31890043, at *5.[5]

By way of example, in *Byrne*, the statute at issue provided, in relevant part:

> Any person who becomes a judge during the period of January 1, 1980, through December 31, 1988, shall not be eligible to be retired for disability unless the judge is credited with at least two years of

---

[5] As neither party had addressed dual-purpose statutes in the summary judgment briefing, the Court ordered supplemental briefing on the question of whether section 5-192p is such a statute and the impact that such a determination would have on Plaintiff's claim. *See* Order Directing Suppl. Briefing, ECF No. 40.

> judicial service or *unless the disability is a result of injury or disease arising out of and in the course of judicial service*.

2002 WL 31890043, at *3 (emphasis added). Citing *Rutter*, the *Byrne* court stated that, "[t]o qualify as a dual-purpose statute, the statute must contain some specific provision which restricts the payment of benefits to cases of work-related disabilities." *Id.* The *Byrne* court found that the statute at issue there qualified because the latter, emphasized portion of the statute restricted payments only to cases of work-related disabilities. *Id.* at *4–5. That portion was therefore "in the nature of a worker's compensation act." *Id.* at *5.

The Court first considers Defendant's argument that Second Circuit precedent precludes recognition of dual-purpose statutes as falling within the scope of section 104(a)(1). In advancing this argument, Defendant urges the Court not to "travel down the 'dual-purpose statute' path," as such a path is inconsistent with Second Circuit precedent. Def.'s Suppl. Mem. at 9–10, ECF No. 44. But the Court finds no Second Circuit precedent—or any circuit precedent—rejecting the concept of dual-purpose statutes as inconsistent with the Internal Revenue Code or Treasury Regulations.[6] To the contrary, the Court finds the decisions of courts that have recognized the concept—many of which cite the Second Circuit's decision in *Rutter*—persuasive. *See Take v. Comm'r Serv.*, 804 F.2d 553, 556 (9th Cir. 1986) ("[T]he Tax Court's opinions bearing on the Internal Revenue Code are entitled to respect because of its special expertise in the field."); *Cohen v. United States*, 999 F. Supp. 2d 650, 669 n.5 (S.D.N.Y. 2014) ("Although decisions of the United States Tax Court are not binding on this Court, 'in an area of law where Tax Court expertise may

---

[6] Defendant argues that the Fifth Circuit, in affirming the Tax Court's decision in *Green*, "did not embrace" the concept of dual-purpose statutes "when presented the opportunity." Def.'s Suppl. Mem. at 3 n.1. But the Fifth Circuit's opinion in *Green* in no way renounced the dual-purpose concept as suggested by Defendant. Rather, the statute at issue in *Green* was not even arguably dual-purpose and other courts had already held that the statute was not in the nature of a workmen's compensation act. *See* 2008 WL 2065187, at *9. Thus, the Fifth Circuit simply did not need to reach the issue because it was wholly inapplicable to the case at bar. *See* 322 F. App'x at 419.

9

be useful in explication,' courts 'ordinarily give that expertise deference.'" (quoting *LaBow v. C.I.R.*, 763 F.2d 125, 130 (2d Cir. 1985))).

Dismissing the persuasive value of these "largely unreported cases,"[7] Defendant argues that a dual-purpose statute fails to meet the standard set out by the Second Circuit in *Rutter* and *Green* because such a statute "by definition does not restrict payments to instances of work-related injuries." Def.'s Suppl. Mem. at 2–3, 10. The Court disagrees. A dual-purpose statute *must* contain at least one provision restricting payments to cases of work-related disabilities. *See Byrne*, 2002 WL 31890043, at *3 (citing *Rutter*, 760 F.2d at 468). And it is only the provision of the statute that does so restrict that will be considered "in the nature of a workmen's compensation act" for purposes of section 104(a)(1). *See id.* at *5–6.

Defendant next argues that analysis of dual-purpose statutes "requires inquiry into the source of the injury and thus breaks with the Second Circuit's approach" of looking only at the nature of the statute." Def.'s Suppl. Mem. at 3. This argument misunderstands the requisite analysis of dual-purpose statutes. Just as is required by *Rutter*, a court should "look only to the face of a statute in determining whether it has a dual purpose." *Byrne*, 2002 WL 31890043, at *4. Then, once the court has determined that the statute is dual-purpose, "the appropriate focus" is not on the source of the injury, as Defendant contends, but rather "on whether the taxpayer in fact received his disability retirement benefits under that specific provision that is in the nature of a workers' compensation act." *Id.* at *5. In other words, the relevant inquiry is which *provision of the statute* was the taxpayer paid under?—not what was the source of the injury itself. This is the very analysis courts undertake when examining non-dual-purpose statutes: if a taxpayer claims an exclusion for payments received under a statute, the taxpayer must first show that they, in fact,

---

[7] Oddly, while dismissing the importance of the Tax Court decisions that recognize dual-purpose statutes, Defendant cites and relies upon similar decisions when those decisions support its arguments.

receive payments pursuant to that statute. *See Rutter*, 760 F.2d at 468 (finding that a taxpayer could not claim that his sick leave payments were excludable under a particular statutory provision because the taxpayer "did not receive his sick leave payments pursuant to this section"). Thus, the Court finds that recognizing that a statute may be dual-purpose and contain both provisions that are in the nature of a workmen's compensation act and provisions that are not is not foreclosed by or even inconsistent with Second Circuit precedent.

Nor are dual-purpose statutes inconsistent with Treasury Regulation § 1.104-1(b)'s mandate that "section 104(a)(1) does not apply to a retirement pension or annuity to the extent that it is determined by reference to the employee's age or length of service, or the employee's prior contributions, even though the employee's retirement is occasioned by an occupational injury or sickness" and "also does not apply to amounts which are received as compensation for a nonoccupational injury or sickness." *See* Def.'s Suppl. Mem. at 3–4. Although, as Defendant notes, a dual-purpose statute may contain provisions that do not limit payments to work-related disabilities or determine eligibility for benefits by reference to an employee's age or length of service, benefits received pursuant to those provisions will not be excludable.[8] Indeed, Defendant's argument misses the point of recognizing that a statute has dual purposes, one of which might result in excludable income and one of which might not.

---

[8] To the extent that Defendant argues that Plaintiff's benefits are calculated by reference to Plaintiff's age or length of service and are therefore not excludable, such an argument fails. *See* Def.'s Mem. in Supp. at 15 & n.3. Plaintiff alleges, and the evidence supports, that her payments are calculated pursuant to the SERS 60% minimum rule such that her payments equal 60% of her salary without regard to her age or length of service. *See Sewards v. Comm'r*, 138 T.C. 320, 322–23 (2012), *aff'd*, 785 F.3d 1331 (9th Cir. 2015) (finding that, where retirees were guaranteed service-connected disability-retirement benefits equaling, at a minimum, 50% of their final compensation, but could receive their service retirement benefits, which were determined by length of service, if the amount was greater, the portions of the retiree's benefits up to 50% of their salary was excludable while the portion exceeding the guaranteed amount was not); *Wyman v. United States*, No. EDCV 12-01266 VAP, 2013 WL 2251744, at *4 (C.D. Cal. May 21, 2013), *aff'd sub nom. Campbell v. United States*, 607 F. App'x 697 (9th Cir. 2015) (finding that the portion of the plaintiff's compensation that was not calculated by reference to his age and length of service could be excluded from taxable gross income).

Accordingly, the Court sees no impediment to recognizing that a statute may be a dual-purpose statute and concludes that payments received pursuant to such a statute may be excludable from gross income if the taxpayer can demonstrate that they receive payments pursuant to the portion of the statute that is in the nature of a workmen's compensation act.

The Court turns next to the question of whether section 5-192p is a dual-purpose statute. Plaintiff argues, and Defendant all but concedes, that section 5-192p is a dual-purpose statute. *See* Pl.'s Suppl. Mem. at 7–8, ECF No. 43; Def.'s Suppl. Mem. at 2 ("Thus, Section 5-192p may qualify as a 'dual-purpose statute.'"). The Court agrees.

As explained above, a court "look[s] only to the face of a statute in determining whether it has a dual purpose." *Byrne*, 2002 WL 31890043, at *4. The Court therefore examines the text of section 5-192p(a), which provides the alternative bases for eligibility for disability retirement. Section 5-192p(a) provides, in relevant part:

> If a member of tier II, while in state service, becomes disabled as defined in subsection (b) of this section, prior to age sixty-five, he is eligible for disability retirement if the member has completed at least ten years of vested service. *If a member of tier II, while in state service, becomes so disabled as a result of any injury received while in the performance of his duty as a state employee, he is eligible for disability retirement, regardless of his period of state service or his age.*

Conn. Gen. Stat. § 5-192p(a) (emphasis added). Just like the statute in *Byrne*, section 5-192p(a) contains two provisions. The first sentence allows disability retirement benefits only to those employees who have become disabled, regardless of the source of the disability, if the employee has at least ten years of vested service. The second, emphasized sentence, however, allows disability retirement benefits to *any* employee, regardless of age or length of service, provided that the injury was "received while in the performance of his duty as a state employee." Consistent with the standards set out in *Byrne* and *Rutter*, section 5-192p(a) both *distinguishes* between work-

12

related and non-work-related injuries, and *restricts* payment of disability retirement only "to cases of work-related disabilities." *See Byrne*, 2002 WL 31890043, at *3 (citing *Rutter*, 760 F.2d at 468). Thus, section 5-192p is a dual-purpose statute, and the second sentence of subsection 5-192p(a) is "in the nature of a workmen's compensation act" for purposes of 26 U.S.C. § 104(a)(1) and Treasury Regulation 1.104-1(b).[9]

The Court next examines whether Plaintiff has met her burden of proving that the exclusion set out in section 104(a)(1) applies to the benefits she receives. *See Green*, 322 F. App'x at 419 (noting that the "taxpayer has the burden of proving entitlement to the § 104(a) exclusion").

As a preliminary matter, the Court rejects Defendant's remarkable assertion that Plaintiff has failed to establish that the benefits she receives are paid pursuant to SERS section 5-192p. *See* Def.'s Mem. in Supp. at 5, 16–17. Plaintiff was a Connecticut State Employee from 1986 to 2009, *see* Conn. Gen. Stat. § 5-192g; applied for and was awarded disability benefits by the State Employees Retirement Commission—a Commission established under section 5-155a of SERS to administer and oversee the operations of SERS, *see* Conn. Gen. Stat. § 5-155a(a); and was examined by the Medical Examining Board ("MEB")—a board of physicians established under SERS, *see* Conn. Gen. Stat. § 5-169. Moreover, both parties' exhibits clearly demonstrate that

---

[9] This conclusion is not altered by the Connecticut Supreme Court's decision in *Travelers Ins. Co. v. Pondi-Salik*, in which the court determined that, for the purposes of an uninsured motorist insurance policy, benefits paid under section 5-192p were retirement benefits rather than "benefits received pursuant to a law similar to our workers' compensation or disability benefit statutes." 262 Conn. 746, 747, 753 (2003). In *Pondi-Salik*, the court's analysis focused in large measure on state-law principles of statutory interpretation, seeking to determine the intent of the legislature and concluding that the legislature intended section 5-192p to function as a component of a cohesive retirement scheme. *Id.* at 754–56. Notwithstanding, federal courts need not defer to a state's interpretation of its own statutes in determining whether payments made thereunder are excludable for tax purposes. *See Take*, 804 F.2d at 556 ("If the federal government were required to accept local characterizations of such laws, the intent of Congress to distinguish between workmen's compensation and other payments might be frustrated."); *Woehl v. Comm'r*, No. 2735-05S, 2007 WL 1542022, at *3 (T.C. May 29, 2007) ("State law creates legal interests and rights; the Federal revenue acts designate when and how interests or rights, so created, shall be taxed."). And federal courts have routinely held that "[a] law that conditions eligibility for benefits on the existence of a work-related injury or sickness may qualify as a workers' compensation act for purposes of sec. 104 even though those benefits are styled 'disability retirement benefits.'" *Byrne*, 2002 WL 31890043, at *2 n.4 (quoting *Take*, 804 F.2d at 557).

Plaintiff receives her disability retirement benefits from the "State Employees Retirement System." *See* Def.'s Mot. Summ. J. Ex. 12, ECF No. 36-12; Pl.'s Mot. Summ. J. Ex. 2 at 8, Ex. 3 at 4–6, ECF Nos. 32-2–3. It cannot therefore be credibly disputed that Plaintiff, a former State of Connecticut Employee, receives her disability benefits pursuant to SERS. Nor can it be disputed that Plaintiff, who reentered state employment in 1986, is a member of the tier-II plan of SERS, which consists of Conn. Gen. Stat. §§ 5-192e to 5-192x. *See* Conn. Gen. Stat. § 5-192g(a) ("Membership in the tier II plan shall be required for each state employee, whether or not exempt from the classified service, appointed after January 1, 1984 . . . ."); § 5-192e(a)("[T]he provisions of sections 5-192e to 5-192x, inclusive, shall apply to all members who first join the state employees retirement system after July 1, 1984 . . . ."); *see also* Appl. at 1 (indicating that Plaintiff is a tier-II member); Pl.'s Mot. Summ. J. Ex. 2 at 8 (same). Section 5-192p is the only section that governs "Disability Retirement" for tier-II SERS members, and Plaintiff has clearly established that the benefits that she receives are "disability retirement benefits." *See* Pl.'s Mot. Summ. J. Ex. 2 at 1, 5–8, Ex. 3 at 4–7. Thus, Plaintiff has carried her burden of establishing that the benefits she receives are paid pursuant to section 5-192p.

However, as discussed, because section 5-192p is a dual-purpose statute, Plaintiff also bears the burden of showing that the benefits she receives are paid pursuant to the provision of the statute that is "in the nature of a workmen's compensation act." *See Byrne*, 2002 WL 31890043, at *5.

Again, Defendant challenges whether Plaintiff has met this burden. Defendant posits that, because the State did not specify under which provision of 5-192p(a) Plaintiff was awarded disability retirement and because Plaintiff was eligible for disability retirement under both provisions, Plaintiff has failed to establish that she receives benefits under the second sentence of

14

5-192p(a). *See* Def.'s Mem. in Supp. at 17. The Court agrees with Plaintiff that there is no genuine issue of material fact as to whether she was paid under the second sentence of section 5-192p(a).

Plaintiff relies upon the Application for Retirement Benefits and the records regarding the approval of her benefits as conclusive evidence that she sought and was approved for service-connected disability retirement benefits pursuant to the second sentence of section 5-192p(a). *See* Pl.'s Mem. in Opp'n at 10, ECF No. 37; Appl. at 1. The Application provided Plaintiff the option to seek either service-connected or non-service-connected disability retirement. It is manifest, as used on the Application, that the "service-connected" disability retirement option refers to disability due to "injury received while in the performance of [a] duty as a state employee" for purposes of the second sentence of section 5-192p(a) and its near-identical counterpart section 5-169(b) for tier-I members.[10] Plaintiff specifically selected service-connected disability retirement and indicated that she wished to receive non-service-connected disability retirement *if she was not approved* for service-connected disability retirement. However, the handwriting on Plaintiff's Application directly underneath the service-connected disability selection states that Plaintiff's application was "Approved S/C."

Moreover, the decision by which Plaintiff's benefits were approved also makes clear that the MEB found that her disability was service connected, noting that, while "not clearly related to the [December 2008] fall . . . . on balance that i[t] is more likely than not, based on the evidence available at this time, that the [Plaintiff's] fall substantially contributed to her current symptoms." *See* Notice of Decision. If, as Defendant suggests, Plaintiff were receiving benefits under the first sentence of section 5-192p(a), or if the MEB did not determine under which provision Plaintiff

---

[10] Indeed, there are only two ways to qualify for disability retirement under either provision of SERS, and the "service-connected" and "non-service-connected" disability retirement options listed on the Application refer to the two ways by which an employee may qualify for such retirement.

was receiving benefits, then the MEB would not have needed to reach a conclusion regarding the causal relationship between Plaintiff's injury at work and her claimed disability. Rather, all that would have been required was a determination that Plaintiff was, in fact, disabled, because Plaintiff also qualified for benefits under the first sentence of section 5-192p(a) due to having over ten years of credited service. The only logical conclusion therefore is that the MEB, in approving Plaintiff's "application for service-connected disability retirement," determined that her disability was the "result of any injury received while in the performance of [Plaintiff's] duty as a state employee" and was approving Plaintiff to receive benefits under the second sentence of section 5-192p(a).[11]

The Court's conclusion is also supported by Connecticut case law. In adjudicating disputes arising in the context of disability retirement benefits under sections 5-192p and 5-169, Connecticut courts have routinely used the term "service-connected" as shorthand for injuries "received while in the performance of" duties of employment. In a clear reference to the second sentence of section 5-192p(a), in *Hill v. State Employees Retirement Commission*, the court noted that "[a]n applicant who has been in state service for less than ten years is entitled to [a disability retirement] pension" pursuant to section 5-192p "only if the applicant has suffered a disability that is *service connected*." 83 Conn. App. 599, 601 (2004) (emphasis added); *see also Mickey v. Mickey*, No. FA014016034, 2006 WL 3317100, at *3 (Conn. Super. Ct. Nov. 2, 2006), *rev'd on*

---

[11] The Court therefore rejects Defendant's assertion the term "service-connected" is "vague" and does not "equate[] to a finding that the employee was injured in the course of employment." Def.'s Suppl. Mem. at 9. Although Defendant correctly observes that the term "service-connected" does not appear in section 5-192p, Def.'s Mem. in Supp. at 18, as discussed above, there is ample evidence supporting the fact that the term, as used here, references an injury "received while in the performance of [a] duty as a state employee" for purposes of section 5-192p(a). Further, Defendant's argument that "[a]ll benefits paid under Section 5-192p are 'service' connected because both sentences in Section 5-192p(a) precondition eligibility on the person being in State 'service'" is simply nonsensical. Def.'s Suppl. Mem. at 9. If all disability retirement benefits under SERS were considered "service-connected," then there would be no need for the Application to distinguish between the two. And because the Application inquires whether the applicant wishes to receive non-service-connected disability retirement benefits if they are not approved for service-connected benefits, it is clear that not all disability retirement benefits under SERS are deemed to be "service-connected."

*other grounds*, 292 Conn. 597 (2009) (noting that "there is no minimum service requirement for a *service-connected disability retirement*" paid pursuant to section 5-192p (emphasis added)).[12] Likewise, in *Bailey v. Medical Examining Board for State Employee Disability Retirement*, the court observed that the MEB denied an employee's application for "service connected disability retirement benefits" pursuant to section 5-169(b) because "the board [was] unable to conclude that her disability is due to her employment" and "[o]n the whole, the evidence [did] not support the conclusion of *service connection*." 75 Conn. App. 215, 218 (2003) (emphasis added); *see also Riley v. State Emp. Ret. Comm'n*, 178 Conn. 438, 438 (1979) (discussing how, "pursuant to General Statutes s 5-169(b), the plaintiff filed an application for service-connected disability retirement with the state employees' retirement commission").[13] These cases further support the Court's conclusion that in awarding Plaintiff "service-connected disability retirement," the MEB awarded Plaintiff disability retirement benefits pursuant to the second sentence of section 5-192p(a).

---

[12] This conclusion is bolstered by the State of Connecticut Office of the Comptroller's own explanation of disability retirement benefits under section 5-192p. The Comptroller's website explains: "To be eligible for a non service-connected disability retirement you must have at least ten years vesting service. *There is no minimum service requirement for a service-connected disability retirement*." See Connecticut State Employees Retirement System Tier II Summary Plan Description, CT Office of the State Comptroller, https://www.osc.ct.gov/empret/tier2summ/tier2summ.htm#DISABIL (last visited Mar. 31, 2023) (emphasis added).

[13] Defendant argues that the *Riley* opinion "shows that even when the state considers an injury 'service-connected,' that finding does not establish that the injury was incurred in the course of employment." Def.'s Reply at 9, ECF No. 39. In fact, the *Riley* opinion reveals the opposite. In *Riley*, the MEB had found both that the plaintiff "sustained a *service-connected* injury" when she "accidentally struck her leg against a chair while working at the Connecticut Valley Hospital," but also that "the plaintiff is both obese and suffers from a congenital sickle cell trait, *which conditions are not service-connected*." 178 Conn. at 438, 442–43 (emphasis added). The *Riley* court then affirmed the MEB's denial of the plaintiff's service-connected disability benefits because "there was insufficient evidence of *current disability* to warrant disability retirement" and because the board was unable to draw "a *causal relationship* between its findings that the plaintiff sustained a service-connected *injury* and that she is *disabled* from performing the duties of her job classification." *Id.* at 438, 443 (emphasis added) (quotations omitted). Thus, the *Riley* opinion supports this Court's conclusion: in order to qualify for "service-connected disability retirement" under SERS, the MEB must find both that an employee sustained an injury in the performance of their duties as an employee—a "service-connected injury"—and that the injury has a "causal relationship" to the claimed disability. Here, the MEB made such determinations and therefore awarded Plaintiff service-connected disability retirement. The Court will not substitute its judgment for that of the MEB.

As the Court concludes that the second sentence of section 5-192p is a statute that is "in the nature of a workmen's compensation act" for purposes of 26 U.S.C. § 104(a)(1) and 26 C.F.R. § 1.104-1(b), and Plaintiff has carried her burden of demonstrating that she receives benefits pursuant to the second sentence of section 5-192p(a), she has demonstrated that these benefits are excluded from her taxable gross income pursuant to 26 U.S.C. § 104(a)(1).

Defendant does not dispute the amounts that Plaintiff claims to have overpaid in taxes—$4,148 for the 2015 tax year, $4,363 for the 2016 tax year, and $1,570 for the 2017 tax year. Accordingly, Plaintiff is entitled to a refund in the total amount of these taxes: $10,081. If Plaintiff seeks further post-judgment relief, she shall file a request for same on or before **April 10, 2023**. Defendant shall respond to any such request on or before **April 24, 2023**.

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion for summary judgment, ECF No. 31, is granted. Defendant's motion for summary judgment, ECF No. 35, is denied.

**SO ORDERED** at Bridgeport, Connecticut, this 31st day of March 2023.

 /s/ Kari A. Dooley
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE